Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:   bheikali@faruqilaw.com

[Additional Captions on Signature Page]

*Attorney for Plaintiff David Phillips*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PHILLIPS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| FITBIT, INC., JAMES PARK, STEVEN J. MURRAY, ERIC N. FRIEDMAN, CHRISTOPHER B. PAISLEY, GLENDA J. FLANAGAN, LAURA J. ALBER, BRADLEY M. FLUEGEL and MATTHEW BROMBERG, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 3:19-cv-8046

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

---

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff David Phillips ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Fitbit, Inc. ("Fitbit" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Fitbit, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Transaction") between Fitbit and Alphabet Inc. ("Google").

2.     On November 1, 2019, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $7.35 in cash for each share of Fitbit stock they own (the "Merger Consideration").

3.     On November 25, 2019, in order to convince Fitbit shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Form PREM14A Preliminary Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act. The materially incomplete and misleading Proxy violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. § 240.14a-9), each of which constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     While touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

incomplete and misleading.

5.     In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for the Company that were prepared by the Company and relied on by Defendants in recommending that Fitbit shareholders vote in favor of the Proposed Transaction; and (ii) the summary of certain valuation analyses conducted by Fitbit's financial advisor, Qatalyst Partners LP ("Qatalyst") in support of its opinion that the Merger Consideration is fair to shareholders, on which the Board relied.

6.     It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an informed decision regarding the Proposed Transaction.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. § 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, the material information discussed below is disclosed to Fitbit shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under

- 2 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1 | traditional notions of fair play and substantial justice.

2 |      10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

3 | 78aa, as well as under 28 U.S.C. § 1391, because Fitbit maintains its principal executive offices in

4 | this District.

5 | **PARTIES**

6 |      11.     Plaintiff is, and at all relevant times has been, a holder of Fitbit common stock.

7 |      12.     Defendant Fitbit is incorporated in Delaware and maintains its principal executive

8 | offices at 199 Fremont Street, 14th Floor, San Francisco, California 94105.   The Company's

9 | common stock trades on the NYSE under the ticker symbol "FIT."

10 |      13.     Individual Defendant James Park is Fitbit's President, Chief Executive Officer, Co-

11 | Founder and Chairman and has been a director of Fitbit since March 2007.

12 |      14.     Individual Defendant Steven J. Murray is Fitbit's Lead Director and has been a

13 | director of Fitbit since June 2013.

14 |      15.     Individual Defendant Eric N. Friedman is Fitbit's Chief Technology Officer and

15 | Co-Founder and has been a director of Fitbit since March 2007.

16 |      16.     Individual Defendant Christopher B. Paisley has been a director of Fitbit since

17 | January 2015.

18 |      17.     Individual Defendant Glenda J. Flanagan has been a director of Fitbit since June

19 | 2016.

20 |      18.     Individual Defendant Laura J. Alber has been a director of Fitbit since June 2016.

21 |      19.     Individual Defendant Bradley M. Fluegel has been a director of Fitbit since March

22 | 2018.

23 |      20.     Individual Defendant Matthew Bromberg has been a director of Fitbit since March

24 | 2018.

25 |      21.     The Individual Defendants referred to in paragraphs 13-20 are collectively referred

26 | to herein as the "Individual Defendants" and/or the "Board."

27 |

28 |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

**CLASS ACTION ALLEGATIONS**

22.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Fitbit (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable.  As of November 15, 2019, there were approximately 261,000,000 shares of Fitbit common stock outstanding, held by hundreds of individuals and entities scattered throughout the country.  The actual number of public shareholders of Fitbit will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)    whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

iii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the

- 4 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Proposed Transaction based on the materially incomplete and misleading Proxy.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.    The Proposed Transaction**

24.    Fitbit is a technology company that combines wearable devices with software and services to give users tools to help them reach their health and fitness goals, augmented by general purpose features that add further utility and drive user engagement. The Company's wearable devices, which include health and fitness trackers and smartwatches, allow users to view data about their daily activity, exercise and sleep in real time. The Company's software and services, which

---

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

include an online dashboard and mobile app, provides users with data analytics, motivational and social tools, and virtual coaching through customized fitness plans and interactive workouts.

25.     On November 1, 2019, Fitbit and Google issued a joint press release announcing the Proposed Transaction, which states in pertinent part:

> SAN FRANCISCO--(BUSINESS WIRE)--Fitbit, Inc. (NYSE: FIT) today announced that it has entered into a definitive agreement to be acquired by Google LLC for $7.35 per share in cash, valuing the company at a fully diluted equity value of approximately $2.1 billion.
>
> "More than 12 years ago, we set an audacious company vision – to make everyone in the world healthier. Today, I'm incredibly proud of what we've achieved towards reaching that goal. We have built a trusted brand that supports more than 28 million active users around the globe who rely on our products to live a healthier, more active life," said James Park, co-founder and CEO of Fitbit. "Google is an ideal partner to advance our mission. With Google's resources and global platform, Fitbit will be able to accelerate innovation in the wearables category, scale faster, and make health even more accessible to everyone. I could not be more excited for what lies ahead."
>
> "Fitbit has been a true pioneer in the industry and has created terrific products, experiences and a vibrant community of users," said Rick Osterloh, Senior Vice President, Devices & Services at Google. "We're looking forward to working with the incredible talent at Fitbit, and bringing together the best hardware, software and AI, to build wearables to help even more people around the world."
>
> Fitbit pioneered the wearables category by delivering innovative, affordable and engaging devices and services. Being "on Fitbit" is not just about the device – it is an immersive experience from the wrist to the app, designed to help users understand and change their behavior to improve their health. Because of this unique approach, Fitbit has sold more than 100 million devices and supports an engaged global community of millions of active users, utilizing data to deliver unique personalized guidance and coaching to its users. Fitbit will continue to remain platform-agnostic across both Android and iOS.
>
> Consumer trust is paramount to Fitbit. Strong privacy and security guidelines have been part of Fitbit's DNA since day one, and this will not change. Fitbit will continue to put users in control of their data and will remain transparent about the data it collects and why. The company never sells personal information, and Fitbit health and wellness data will not be used for Google ads.
>
> The transaction is expected to close in 2020, subject to customary closing conditions, including approval by Fitbit's stockholders and regulatory approvals.

- 6 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Qatalyst Partners LLP acted as financial advisor to Fitbit, and Fenwick & West LLP acted as legal advisor.

**About Fitbit, Inc. (NYSE: FIT)**

Fitbit helps people lead healthier, more active lives by empowering them with data, inspiration and guidance to reach their goals. Fitbit designs products and experiences that track and provide motivation for everyday health and fitness. Fitbit's diverse line of innovative and popular products include Fitbit Charge 3™, Fitbit Inspire HR™, Fitbit Inspire™ and Fitbit Ace 2™ activity trackers, as well as the Fitbit Ionic™ and Fitbit Versa™ family of smartwatches, Fitbit Flyer™ wireless headphones, and Fitbit Aria family of smart scales. Fitbit products are carried in approximately 39,000 retail stores and in 100+ countries around the globe. Powered by one of the world's largest databases of activity, exercise and sleep data and Fitbit's leading health and fitness social network, the Fitbit platform delivers personalized experiences, insights and guidance through leading software and interactive tools, including the Fitbit and Fitbit Coach apps, and Fitbit OS for smartwatches. Fitbit's paid subscription service, Fitbit Premium, uses your unique data to deliver actionable guidance and coaching in the Fitbit app to help you reach your health and fitness goals. Fitbit Health Solutions develops health and wellness solutions designed to help increase engagement, improve health outcomes, and drive a positive return for employers, health plans and health systems.

26.     Fitbit is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

27.     If the false and/or misleading Proxy is not remedied and the Proposed Transaction is consummated, Defendants will directly and proximately have caused damages and actual economic loss (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

## II.     The Materially Incomplete and Misleading Proxy

28.     On November 25, 2019, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *The Materiality of Financial Projections*

29.     A company's financial forecasts are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.  Here, the Proxy discloses that "[i]n connection with its evaluation of the Transactions, Fitbit's management prepared the Projections." Proxy 42. The projections were provided to the Board, Qatalyst and Google. *Id.*

30.     When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions.  In regard to financial information, companies are required to disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K.  *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

31.     Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format."  17 C.F.R. § 229.10(b).  Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items."  17 C.F.R. § 229.10(b)(2).

32.     In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, *the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.* In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*

> (ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

33.     Here, Fitbit's shareholders would clearly find complete and non-misleading financial projections material in deciding how to vote, considering that in making its recommendation that shareholders vote in favor of the Proposed Transaction, the Board specifically relied on the financial forecasts to determine that the "Merger Agreement and the Merger are fair to and in the best interests of Fitbit stockholders."  Proxy 35-37.

34.     As discussed further below, the non-GAAP financial projections here do not provide Fitbit's shareholders with a materially complete understanding of the assumptions and key factors considered in developing financial projections, which assumptions, factors and other inputs the Board reviewed.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

*The Financial Projections Relied on by the Board*

35.     The Proxy discloses that "[i]n connection with its evaluation of the Transactions, Fitbit's management prepared the Projections." *Id.* at 42. The projections were provided to the Board, Qatalyst and Google. *Id.*

36.     The Proxy further discloses that the assumptions used in the financial projections were "reasonably prepared to reflect the best currently available estimates and judgments of Fitbit's management of the future financial performance of Fitbit and other matters covered thereby." *Id.* at 43.

37.     The Proxy discloses two sets of financial projections. The first set of projections (the "Projections") was approved and relied on by the Board, utilized by Qatalyst, and made available to Google. *Id.* at 42. The second set of projections (the "Advocacy Case") was not approved by the Board or utilized by Qatalyst. *Id.* at 45. The Advocacy Case was provided to Google. *Id.*

38.     The Proxy goes on to disclose, *inter alia*, forecasted values for projected non-GAAP (Generally Accepted Accounting Principles) financial metrics for 2019 through 2024 for: (1) Non-GAAP Cost of Revenue; (2) Non-GAAP Gross Profit; (3) Non-GAAP Operating Expense; (4) Non-GAAP Operating Income; (5) NOPAT; (6) Unlevered Free Cash Flow; (7) Adjusted EBITDA; (8) Non-GAAP Net Income (Loss); and (9) Non-GAAP Earnings Per Share, but fails to provide (i) the line items used to calculate these non-GAAP metrics nor (ii) a reconciliation of these non-GAAP projections to the most comparable GAAP measures. *Id.* at 44-45.

39.     The Proxy discloses the traditional income statement metrics Cost of Revenue, Gross Profit, Operating Expenses and Operating Income, but adjusts them into non-GAAP forms. Non-GAAP Cost of Revenue and Non-GAAP Gross Profit were adjusted by "subtracting stock-based compensation expense, the impact of restructuring and intangible assets amortization." *Id.* at 44 nn.3-4. Non-GAAP Operating Expense and Non-GAAP Operating Income were similarly

- 10 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

adjusted by "subtracting stock-based compensation expense, certain litigation expenses, the impact of restructuring and intangible assets amortization." *Id.* at 44 nn.5-6. Nevertheless, the Proxy fails to reconcile these income statement metrics to their most comparable GAAP measures or disclose the line items used to calculate them, rendering the Proxy materially false and/or misleading. *Id.* at 44-45.

40.     The Proxy defines NOPAT as "a non-GAAP financial measure calculated by starting with Non-GAAP operating income (loss) and making an associated non-GAAP tax adjustment." *Id.* at 44. n.7. Nevertheless, the Proxy fails to reconcile NOPAT to its most comparable GAAP measure, rendering the Proxy materially false and/or misleading. *Id.*

41.     The Proxy defines Unlevered Free Cash Flow ("UFCF") as "a non-GAAP financial measure calculated by starting with NOPAT and subtracting capital expenditures, adding back depreciation and subtracting investment in working capital." *Id.* at 44. n.8. Nevertheless, the Proxy fails to reconcile UFCF to its most comparable GAAP measure, rendering the Proxy materially false and/or misleading. *Id.*

42.     The Proxy defines Adjusted EBITDA as "a non-GAAP financial measure calculated by starting with net loss and subtracting stock-based compensation expense, certain litigation expenses, the impact of restructuring, impairment of equity investment, depreciation, intangible assets amortization, interest income, net and income tax expense (benefit)." *Id.* at 44. n.9. Nevertheless, the Proxy fails to reconcile Adjusted EBITDA to its most comparable GAAP measure or disclose the line items used to calculate Adjusted EBITDA, rendering the Proxy materially false and/or misleading. *Id.*

43.     The Proxy defines Non-GAAP Net Income (Loss) as "starting with net loss and subtracting stock-based compensation expense, certain litigation expenses, the impact of restructuring, impairment of equity investment, intangible assets amortization and the income tax effect of non-GAAP adjustments." *Id.* at 44. n.10. Nevertheless, the Proxy fails to reconcile Non-GAAP Net Income (Loss) to its most comparable GAAP measure or disclose the line items used

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

to calculate Non-GAAP Net Income (Loss), rendering the Proxy materially false and/or misleading. *Id.*

44.   The Proxy defines Non-GAAP Earnings Per Share as "exclud[ing] stock-based compensation expense, certain litigation expense, the impact of restructuring, impairment of equity investment, intangible assets amortization and the income tax effect of non-GAAP adjustments." *Id.* at 44. n.11. Nevertheless, the Proxy fails to reconcile Non-GAAP Earnings Per Share to its most comparable GAAP measure or disclose the line items used to calculate Non-GAAP Earnings Per Share, rendering the Proxy materially false and/or misleading. *Id.*

45.   Thus, the Proxy's disclosure of these non-GAAP financial forecasts provides an incomplete and materially misleading understanding of the Company's future financial prospects and the inputs and assumptions for which those prospects are based upon.  It is clear that those inputs and assumptions were in fact forecasted and utilized in calculating the non-GAAP measures disclosed and relied on by the Board to recommend the Proposed Transaction in violation of Section 14(a) of the Exchange Act.

46.   The financial projections disclosed on pages 44-45 of the Proxy violate Section 14(a) of the Exchange Act because: (i) the use of such forecasted non-GAAP financial measures alone violates SEC Regulation G, as a result of Defendants' failure to reconcile those non-GAAP measures to their closest GAAP equivalent or otherwise disclose the specific financial assumptions and inputs used to calculate the non-GAAP measures; and (ii) they violate SEC Regulation 14a-9 because they are materially misleading, as shareholders are unable to discern the veracity of the financial projections.

47.   As such, this information must be disclosed in order to cure the materially misleading disclosures regarding both the financial projections developed by the Company as well as the projections relied upon by the Company's financial advisors.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

***The Financial Projections Violate Regulation G***

48.     The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[3]

49.     Defendants must comply with Regulation G.  More specifically, the company must disclose the most directly comparable GAAP financial measure <u>and</u> a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[4]

50.     Moreover, the SEC has publicly stated that the use of non-GAAP financial measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as

---

[1]     Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure.  17 C.F.R. § 244.101(a)(1).

[2]     Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[3]     SEC, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (Jan. 22, 2003), *available at* https://www.sec.gov/rules/final/33-8176.htm ("SEC, *Final Rule*").

[4]     SEC, *Final Rule.*

[5]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, *available at* http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Fitbit included in the Proxy here) implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

51.     The SEC has required compliance with Regulation G, including reconciliation requirements, in other merger transactions.  *Compare Youku Tudou Inc., et al.*, Correspondence 5 (Jan. 11, 2016) (Issuer arguing that Rule 100(d) of Regulation G does not apply to non-GAAP financials relating to a business combination),[7] *with Youku Tudou Inc., et al.*, SEC Staff Comment Letter 1 (Jan. 20, 2016) ("[The SEC] note[s] that your disclosure of projected financial information is not in response to the requirements of, or pursuant to, Item 1015 of Regulation M-A and is thus not excepted from Rule 100 of Regulation G.");[8] *see Harbin Electric, Inc.*, Correspondence 29

---

[6]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted).

[7]     *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000110465916089133/filename1.htm.

[8]     *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000000000016062042/filename1.pdf.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1   (Aug. 12, 2011) ("Pursuant to the requirements of Regulation G, we have added a reconciliation

2   of actual and projected EBIT to GAAP net income . . . .").[9]

3       52.    Compliance with Regulation G is mandatory under Section 14(a), and non-

4   compliance constitutes a violation of Section 14(a).  Thus, in order to bring the Proxy into

5   compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP

6   financial measures to their respective most comparable GAAP financial measures.

7       ***The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9***

8       53.    In addition to the Proxy's violation of Regulation G, the lack of reconciliation or,

9   at the very least, the line items utilized in calculating the non-GAAP measures render the financial

10  forecasts disclosed materially misleading, as shareholders are unable to understand the differences

11  between the non-GAAP financial measures and their respective most comparable GAAP financial

12  measures.  Nor can shareholders compare the Company's financial prospects with similarly

13  situated companies.

14      54.    Such projections are necessary to make the non-GAAP projections included in the

15  Proxy not misleading for the reasons discussed above.  Indeed, Defendants acknowledge "non-

16  GAAP financial measures should not be viewed as a substitute for GAAP financial measures, and

17

18  [9]   *Available at* https://www.sec.gov/Archives/edgar/data/1266719/000114420411046281/

19  filename1.htm. *See also Actel Corp.*, SEC Staff Comment Letter 2 (Oct. 13, 2010) ("Opinion of
    Actel's Financial Advisor, page 24 . . . . This section includes non-GAAP financial

20  measures.  Please revise to provide the disclosure required by Rule 100 of Regulation G."),
    *available at* https://www.sec.gov/Archives/edgar/data/907687/000000000010060087/filename1

21  .pdf. *See also The Spectranetics Corp.*, SEC Staff Comment Letter 1 (July 18, 2017) ("Item 4.
    The Solicitation or Recommendation Certain Spectranetics Forecasts, page 39 . . . [P]rovide the

22  reconciliation required under Rule 100(a) of Regulation G"), *available at*
    https://www.sec.gov/Archives/edgar/data/789132/000000000017025180/filename1.pdf.     The

23  SEC Office of Mergers and Acquisitions applied Regulation G in these transactions, which reflects
    the SEC's official position.  Any claim that the SEC has officially sanctioned the use of non-GAAP

24  financial forecasts for business combinations when the Board itself created and relied on such non-
    GAAP forecasts to recommend a transaction such as the Proposed Transaction is incorrect. The

25  SEC's website provides certain unofficial guidance for certain matters, called Compliance and
    Disclosure Interpretations ("C&DI's") which through the use of Q&As reflect the views of

26  particular SEC staff and on which certain issuers have in the past claimed an exemption from
    Regulation G. The SEC itself expressly disclaims C&DI's as they are not regulations that have

27  been reviewed by the SEC, and the SEC expressly states that they are not binding and should not
    be relied on. *See* www.sec.gov/divisions/corpfin/cfguidance.shtml.

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

1    may be different from non-GAAP financial measures used by other companies. Furthermore, there

2    are limitations inherent in non-GAAP financial measures, because they exclude charges and credits

3    that are required to be included in a GAAP presentation. Accordingly, these non-GAAP financial

4    measures should be considered together with, and not as an alternative to, financial measures

5    prepared in accordance with GAAP." Proxy 43.

6         55.    As such, financial projections are plainly material, and shareholders would clearly

7    want a complete and non-misleading understanding of those projections.

8         56.    In order to cure the materially misleading nature of the projections under SEC Rule

9    14a-9 as a result of the omitted information on pages 44-45, Defendants must provide a

10   reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

11             ***The Materially Misleading Financial Analyses***

12        57.    The summary of the valuation methodologies utilized by Qatalyst including the

13   utilization of certain of the non-GAAP financial projections described above by Qatalyst, in

14   connection with its valuation analyses, (*id.* at 39) is misleading in violation of Regulation 14a-9.

15   The opacity concerning the Company's internal projections renders the valuation analyses

16   described below materially incomplete and misleading, particularly as companies formulate non-

17   GAAP metrics differently.  Once a proxy discloses internal projections relied upon by the Board,

18   those projections must be complete and accurate.

19        58.    Qatalyst's fairness opinion only contains two substantive analyses of Fitbit: a

20   discounted cash flow analysis and a comparable companies analysis. *Id.* at 40-41. Notably, the

21   fairness opinion does not include a comparable transaction analysis. Presumably, Qatalyst did

22   perform a comparable transaction analysis that was not disclosed as it is demonstrates what

23   acquirers have paid for similarly situated companies and includes the control premium in the

24   analysis. The failure to disclose this analysis is materially misleading because without it,

25   shareholders are unable to determine the fair value of the Company. Fitbit touts the "significant

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8046

premium over the market price," but the fairness opinion does not provide any information for shareholders to determine if the premium is representative of market transactions. *Id.* at 36.

59.    Additionally, the fairness opinion fails to disclose Qatalyst's prior relationship with Fitbit, including the nature, timing, and amount of payment of past services that Qatalyst has provided, if any. *Id.* at 42.

60.    The Proxy also fails to disclose the analyst projections utilized by Qatalyst.

61.    With respect to Qatalyst's *Illustrative Discounted Cash Flow Analysis*, the Proxy states that Qatalyst performed a discounted cash flow analysis of Fitbit by adding the implied net present value of Fitbit's estimated future UFCF for the fourth quarter of calendar year 2019 through calendar year 2023, the implied net present value of Fitbit's terminal value, the implied net present value of Fitbit's forecasted tax attributes outstanding as of December 31, 2023, and the Company's cash as of September 28, 2019. *Id.* at 40. Qatalyst used a discount rate range of 12.5% to 16.5%, calculated as the Company's weighted average cost of capital, and applied multiples of enterprise value to next twelve months estimated revenue of 0.3x to 0.8x to calendar year 2024 projections to calculate the terminal value. *Id.* Qatalyst then divided the total by the amount of fully diluted shares of common stock adjusted by Fitbit restricted stock units, performance stock units, options and warrants. *Id.*

62.    The Proxy does not provide the information Qatalyst utilized in the *Discounted Cash Flow Analysis*. The Proxy does not disclose the values Qatalyst calculated for the range of terminal values, any of the inputs that went into calculating the Company's weighted average cost of capital, the inputs and assumptions that went into selecting the enterprise value to next twelve months estimated revenue multiple range, what, if any, enterprise value adjustments were made, nor the number of fully diluted shares outstanding, Fitbit restricted stock units, performance stock units, options or warrants.

63.    Since information was omitted, shareholders are unable to discern the veracity of Qatalyst's *Discounted Cash Flow Analysis*. Without further disclosure, shareholders are unable

- 17 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

to compare Qatalyst's calculations with the Company's financial projections.  The absence of any single piece of the above information renders Qatalyst's *Discounted Cash Flow Analysis* incomplete and misleading.  Thus, the Company's shareholders are being materially misled regarding the value of the Company.

64.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id*. at 1577-78 (footnotes omitted).

65.     Therefore, in order for Fitbit shareholders to become fully informed regarding the fairness of the Merger Consideration, the material omitted information must be disclosed to shareholders.

66.     In sum, the Proxy independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Transaction from Fitbit shareholders.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

67.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

68.     Further, failure to remedy the deficient Proxy and consummate the Proposed Transaction will directly and proximately cause damages and actual economic loss to shareholders (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## COUNT I
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

69.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

70.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

71.     As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure and a reconciliation "by schedule or other

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

72.     The failure to reconcile the non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

73.     As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e., the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

## COUNT II
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

74.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

75.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9(a).

76.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

77.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the

- 20 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

78.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

79.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

80.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

81.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1    82.    Fitbit is also deemed negligent as a result of the Individual Defendants' negligence

2  in preparing and reviewing the Proxy.

3    83.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the

4  Class, who will be deprived of their right to cast an informed vote if such misrepresentations and

5  omissions are not corrected prior to the vote on the Proposed Transaction.

6    84.    As a direct and proximate result of the dissemination of the false and/or misleading

7  Proxy Defendants used to recommend that shareholders approve the Proposed Transaction,

8  Plaintiff and the Class will suffer damages and actual economic losses (i.e., the difference between

9  the value they will receive as a result of the Proposed Transaction and the true value of their shares

10  prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief

11  as the Court deems appropriate, including rescissory damages.

### COUNT III
**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

15    85.    Plaintiff incorporates each and every allegation set forth above as if fully set forth

16  herein.

17    86.    The Individual Defendants acted as controlling persons of Fitbit within the meaning

18  of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors

19  and/or officers of Fitbit, and participation in and/or awareness of the Company's operations and/or

20  intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with

21  the SEC, they had the power to influence and control and did influence and control, directly or

22  indirectly, the decision making of the Company, including the content and dissemination of the

23  various statements that Plaintiff contends are materially incomplete and misleading.

24    87.    Each of the Individual Defendants was provided with or had unlimited access to

25  copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

26  shortly after these statements were issued and had the ability to prevent the issuance of the

27  statements or cause the statements to be corrected.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

88.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing the Proxy.

89.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

90.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

91.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1     C.     Directing Defendants to account to Plaintiff and the Class for all damages sustained

2 as a result of their wrongdoing and to award damages arising from proceeding with the Proposed

3 Transaction;

4     D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable

5 attorneys' and expert fees and expenses; and

6     E.     Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

8     Plaintiff demands a trial by jury on all issues so triable.

9 Dated:  December 10, 2019

Respectfully submitted,

**FARUQI & FARUQI, LLP**

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**

By:  _/s/ Benjamin Heikali_
Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Tel.: (424) 256-2884
Fax: (424) 256-2885
Email: bheikali@faruqilaw.com

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

*Counsel for Plaintiff*

- 24 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

3:19-cv-8046

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, David Phillips ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed a draft complaint against Fitbit, Inc. ("Fitbit") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.  Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3.  Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.  Plaintiff's transactions in Fitbit securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.  In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 5th day of December, 2019.

David Phillips

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 04/03/19 | 450 |
|  |  |  |
|  |  |  |